FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

99 NOV 15 PM 3: 37

TRANS CONTINENTAL RECORDS, INC.,
BMG ENTERTAINMENT, BMG ARIOLA
MUENCHEN GmbH, TRANS CONTINENTAL
ENTERTAINMENT, INC. and LOUIS J.
PEARLMAN,

          Plaintiffs,

v.

CIVIL ACTION NO.
99-1282-CIV-ORL-22C

ZOMBA RECORDING CORPORATION,
CLIVE CALDER, JAMES LANCE BASS,
JOSHUA SCOTT CHASEZ, JOSEPH
ANTHONY FATONE, JR., CHRISTOPHER
ALAN KIRKPATRICK, and JUSTIN
RANDALL TIMBERLAKE,

          Defendants.
_____/

### PLAINTIFFS' MEMORANDUM ADDRESSING THE AMOUNT OF SECURITY TO BE POSTED PURSUANT TO FED. R. CIV. P. 65(C)

Pursuant to Local Rule 4.06(b)(1) and the Court's Order dated November 5, 1999, plaintiffs Trans Continental Records, Inc., Trans Continental Entertainment, Inc. and Louis J. Pearlman ("Pearlman") (collectively "Trans Continental") and BMG Entertainment and BMG Ariola Muenchen GmbH (collectively "BMG") submit this memorandum addressing the question of the appropriate amount of security to be posted pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

1

51

## **Preliminary Statement**

No security bond, or a nominal bond, is appropriate here because there is no likelihood that defendants will be injured by the preliminary injunction. The absence of harm to defendants while the injunction is in place is demonstrated by the following facts:

- The injunction will not prevent the Group Members from enjoying substantial benefits from their ongoing career activities. The Group Members are continuing to tour and sell merchandise, generating substantial income. In addition, the Group currently has hit songs on the record charts and recent and scheduled performances on major network television shows. Thus, the limited injunction sought here will not possibly render the Group Members "unable to pursue [their] career." (Group Members Br. 1).

- Defendants claim that the Group Members must release a new album by the first quarter of 2000. The requested injunction will not prevent this from happening because plaintiffs are prepared to conduct expedited discovery and proceed to an early trial, resulting in a resolution of this case by defendants' self-proclaimed deadline.

- To further protect against any theoretical harm, Trans Continental is willing, and hereby offers to, escrow income received by Trans Continental in the future while the injunction is in place, subject to agreement or order of the Court.

- BMG is a multi-billion dollar company and, together with Trans Continental, has more than sufficient assets to satisfy any potential damage award in favor of either the Group Members or Zomba based on any claimed wrongful issuance of the injunction.

- In addition, plaintiffs are willing to stipulate that the absence (or nominal amount) of a bond will not be deemed to constitute a limit on the amount of potential damages defendants may recover.

- Finally, if the Group Members wish to release a new album before the first quarter of 2000, they can do so immediately on the RCA Label with the same creative and distribution team that brought them spectacular success in the past on their prior albums, which have sold over 8 million units in the United States alone. Defendants never have claimed that RCA is not a premier record company and concede that RCA has done a magnificent job distributing the Group's records in the past.

In an effort to create the illusion that they will suffer harm if an injunction is granted, defendants devote much of their 500+ page opposition papers to painting a portrait of the Group

Members as "indentured servants" who supposedly have been paid only small amounts of money. They do so to create the impression that the Group Members are "victims" on the brink of poverty who will be destitute if the injunction is granted. This is an entirely false portrait.

Defendants conceal the fact that the Group Members already have received *many millions of dollars* in royalty payments from plaintiffs from the sale of records, touring activities, and merchandising.[1] In addition, defendants conceal that the Group Members are due to receive substantial additional accrued royalties while the injunction is in place. This is hardly "indentured servitude." Clearly, these are affluent young men who face no financial or artistic harm by the issuance of the limited injunction sought.

In short, as demonstrated in more detail below, the facts justify either no security or a nominal security bond. Nevertheless, in the event the Court determines that security is warranted, plaintiffs suggest that a bond in the amount of no more than $250,000 is appropriate given the absence of any cognizable harm to defendants, the safeguards proposed by plaintiffs, the financial strength and stability of plaintiffs, and the other factors set forth below.

---

[1] Plaintiffs will be submitting declarations to the Court establishing these and the other facts referred to herein.

3

**Argument**

**I.**

**SECURITY IS UNNECESSARY BECAUSE DEFENDANTS WILL SUFFER NO HARM FROM THE PRELIMINARY INJUNCTION**

Courts in the Eleventh Circuit, including this Court, hold that, under Rule 65(c), a court has discretion to determine that, under the circumstances before it, no security is required. See Cabral v. Olsten Corp., 843 F. Supp. 701, 704 (M.D. Fla. 1994) ("The question of whether security will be required rests in the sound discretion of the Court.") (citation omitted); Sundor Brands, Inc. v. Borden, Inc., 653 F. Supp. 86, 93 (M.D. Fla. 1986) (same holding); University Books and Videos, Inc. v. Metropolitan Dade Co., 33 F. Supp.2d 1364, 1374 (S.D. Fla. 1999) ("Whether or not to require a bond in any particular case . . . is within the discretion of the trial judge."); Popular Bank of Florida v. Banco Popular de Puerto Rico, 180 F.R.D. 461, 463 (S.D. Fla. 1998); cf. Daniels v. School Board of Brevard County, Florida, 985 F. Supp. 1458, 1462 (M.D. Fla. 1997).

Further, where there is no or little likelihood of harm to a defendant during the pendency of the injunction, numerous federal courts hold that no security, or a nominal security, is required to be posted by the plaintiff. See Doctor's Associates, Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir. 1996); Coquina Oil Corp. v. Transwestern Pipeline Co., 825 F.2d 1461, 1462 (10th Cir.1987) quoting Continental Oil Co. v. Frontier Refining Co., 338 F.2d 780, 782 (10th Cir.1964) ( "a bond is unnecessary to secure a preliminary injunction 'if there is an absence of proof showing a likelihood of harm'"); Int'l Controls Corp. v. Vesco, 490 F.2d 1334, 1356 (2d Cir. 1974) cert. denied Vesco & Co., Inc. v. Int'l Controls Corp., 434 U.S. 1014 (1978); Prairie Bond of Potawatomi Indians, ___ F. Supp.2d ___, 1999 WL 965455, *2 (D. Kan. Sept. 23, 1999) (injunction bond unnecessary where there was "no showing of a likelihood of monetary damages to the defendants"); Arkansas Best Corp. v. Carolina Feight Corp., 60 F.Supp.2d 517, 521 (W.D.N.C. 1999); Texaco Inc. v. Leavitt, 1994 WL 129763, *2 (D. Mass. Apr. 8, 1994).

As we now demonstrate, there is no likelihood of injury to defendants and, therefore, either no bond, or a nominal bond, is required.

A. THE GROUP WILL CONTINUE TO TOUR, SELL MERCHANDISE AND REMAIN IN THE PUBLIC SPOTLIGHT

Defendants contend that they will be injured by the injunction because the Group Members have not released an album since March 1998, and their careers will be threatened if they do not release their next album by the Spring of 2000.[2] Defendants state: "[t]o maintain the momentum of 'N SYNC's career, an album ideally should have been released this year, but it is essential that 'N SYNC release its next album no later than the first quarter of next year." (Zomba Br. p.8) Elsewhere, defendants state that an injunction will render the Group Members "unable to pursue [their] career." (Group Members Br. 1) Defendants' assertion that the Group Members are in imminent danger of falling from public view and plummeting into obscurity is conclusively belied by the fact that they are continuing to tour, sell merchandise and engage in other professional activities, thereby maintaining their status as one of the most popular and visible groups in the world -- with no prospect of fading away anytime soon.

Trans Continental is willing to proceed with the currently scheduled tour dates under appropriate terms and merchandising activities under existing agreements are ongoing. Accordingly, these substantial streams of income -- on top of the millions of dollars they already have received -- will not be affected by the injunction.

In addition, the Group will remain at the forefront of popularity and public visability during the pendency of an injunction because it:

---

[2] In fact, the Group's last album was not the album released by RCA in March 1998, but the Christmas album released in late 1998; since that time, RCA has sold approximately 1,700,000 records of the Christmas album.

5

- Currently has a hit single on the record and video charts, entitled *Music of My Heart* (credited to BMG and Trans Continental).

- Currently enjoys prominent rotation of music videos on MTV.

- Currently has a single on the soundtrack for *Pokémon* (credited to BMG/RCA and Trans Continental), which was released on November 9, 1999.

- Currently has a single on the soundtrack for the film *Light it Up* (credited to BMG/RCA and Trans Continental), which was released on November 9, 1999.

- Is scheduled to appear and perform on *The Rosie O'Donnell Show;* CBS' Thanksgiving special *Celine Dion: All the Way* on November 24, 1999; CBS's Holiday special entitled *A Home for the Holidays* on December 23, 1999; and on ABC's Millennium Celebration anchored by Peter Jennings on December 31, 1999.

- Has had recent appearances as featured artists on *Touched By An Angel* and the MTV show, *Total Request Live*.

Accordingly, the requested injunction clearly will not prevent the Group from continuing to prosper artistically and financially.

Moreover, any delay in the release of a record -- the purported injury identified by defendants -- is due entirely to defendants' own unilateral actions. Defendants could have sought a declaratory judgment in May of this year when they purported to "terminate" their contracts, but instead, after failing to obtain an acceptable renegotiation with Trans Continental, breached their contracts with plaintiffs and entered into an illegal agreement with Zomba. Defendants therefore cannot complain about any delay in the release of the Group's next album.

C. PLAINTIFFS WOULD WELCOME AN EXPEDITED TRIAL

In addition, an injunction would not preclude the Group Members from releasing their next album by the Spring of 2000 because plaintiffs are prepared to conduct expedited discovery and proceed to an early trial, if consistent with the Court's calendar. This procedure will promptly resolve all of the claims in this action, based upon a fully developed record, minimize any potential adverse effect of an injunction, and permit the release of an album if, after a trial, the Court determines Zomba may lawfully do so, by Zomba prior to its stated deadline of the

first quarter of 2000, E.g., Standard Register Co. v. Cleaver, 30 F. Supp.2d 1084, 1100 (N.D. Ind. 1998) (where "[i]t can reasonably be anticipated that [] case will proceed to trial within one year," amount of bond would be equal to approximately one year of enjoined former employee's salary); Doe v. Manning, 1994 WL 99052, *1 (W.D. Va. Mar. 15, 1994) (no bond necessary because "injunction should be short in duration . . . and places no significantly greater pecuniary burden on defendants than they had already intended or were required to assume."). Defendants therefore would not be harmed by the injunction.

D.  TRANS CONTINENTAL WILL ESCROW FUTURE REVENUE

The Group Members also will not be injured by a preliminary injunction because the only damage they could conceivably incur is monetary, and Trans Continental is willing to undertake measures to protect against such potential harm. Specifically, Trans Continental is prepared to escrow proceeds received by Trans Continental in the future while the injunction is pending, to be disbursed only (1) to unrelated third party vendors for payment of expenses or (2) to the parties upon agreement with the Group Members or further order of the Court.

E.   PLAINTIFFS WILL STIPULATE THAT THE ABSENCE OR AMOUNT OF A BOND WILL NOT CONSTITUTE A LIMIT ON DEFENDANTS' DAMAGES

Plaintiffs are willing to agree that the absence of a bond, or the nominal amount of any bond, would not be deemed to constitute a limit on the amount of damages to which defendants would be entitled for wrongful injunction if they ultimately prevailed on the merits. Clearly, this undertaking protects defendants in the unlikely event it is later determined that the preliminary injunction was wrongfully issued. See Continuum Company, Inc. v. Incepts, Inc., 873 F.2d 801, 804 (5th Cir.), reconsidered on other grounds, 883 F.2d 333 (5th Cir. 1989) (holding that district court's order increasing amount of bond from $200,000 to $2,000,000 be stayed because the plaintiff continued to provide the $200,000 bond and "in addition, fil[ed] an undertaking with this court that the amount of the bond will not limit the amount of damages for which it might be liable, should it be liable for any, as a result of a wrongful issuance of the injunction."); Helene Curtis v. National Wholesale Liquidators, 890 F. Supp. 152, 160-61 (E.D.N.Y. 1995) (holding that "in light of Plaintiff's waiver of any limitation on damages, this Court finds that Plaintiff need not post security in this case").

In addition, there can be no dispute that plaintiffs will be able to satisfy any damages that might be awarded against them for a wrongfully issued injunction. BMG is a multi-billion dollar company and, therefore, has more than sufficient funds to satisfy any possible monetary judgment, as do Pearlman and Trans Continental. See Continental Oil Co. v. Frontier Refining Co., 338 F.2d 780, 783 (10th Cir. 1964) (holding that bond not required where plaintiff was a corporation "with considerable assets . . . able to respond in damages if [defendant] does suffer damages by reason of the injunction"); Specialty Chemicals & Services, Inc. v. Wayne D. Chandler and Southern Industrial Chemicals, Inc. 1988 WL 618583, *7 (N.D. Ga. 1988) (holding that plaintiff need not post a bond because, *inter alia,* it was shown to be "sufficiently solvent to pay defendants' costs should it lose at trial").

F.     THE GROUP CAN RELEASE ITS NEXT ALBUM ON RCA

If the injunction is issued, and the Group wishes to release its next album prior to the Spring of 2000, it can do so immediately through BMG/RCA. The Group cannot claim that a BMG/RCA release would not be as successful as a Zomba release because BMG/RCA is the same record company that:

- Defendants concede is one of the largest, most respected and successful record companies in this country and throughout the world;

- Since mid-1999, has been ready, willing and able to release the next Group album with the same creative and distribution team that helped the Group achieve spectacular success in the past (E.g., Calder Dec. ¶48);

- The Group Members expressly acknowledged in writing and embraced for more than two years as their "worldwide" record company;

- Sold more than 8 million copies of 'N SYNC albums in the United States alone;

- Currently distributes all 'N SYNC records and Zomba records; and

- Worked closely and cooperatively with the Group Members in the recording and preparation of the next Group album until their team of legal and business advisors issued the purported "termination."

Significantly, defendants do not once question the ability or effectiveness of BMG/RCA to distribute, promote or sell the Group's records. Nor do defendants allege that the Group ever was harmed in any fashion as a result of its relationship with BMG/RCA. Thus, releasing the next record on the RCA Label cannot conceivably harm the Group. Indeed, the label on which the Group wishes to release its next record (Zomba) lacks its own distribution network and itself distributes its records through BMG. Under these circumstances, an RCA release would greatly benefit the Group, both commercially and artistically.

9

G.  SECURITY IS NOT APPROPRIATE BECAUSE
    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

Finally, no (or a nominal) bond should be required because plaintiffs are overwhelmingly likely to succeed on the merits. As set forth in their moving papers, and as will be further established in plaintiffs' future submissions, plaintiffs' claims are based upon existing trademarks and fully-enforceable written agreements, which the Group Defendants have chosen to disregard based upon a purported "termination" which is pretextual and of no force or effect. Indeed, the Group Members announced their purported termination in May 1999 only after they failed to obtain a satisfactory re-negotiation of their contractual arrangements -- despite the fact that they had reaped many millions of dollars from plaintiffs over the course of several years, enthusiastically embraced plaintiffs as their contractual partners and, with plaintiffs' integral assistance and participation, rocketed from virtual anonymity to superstardom. See University Books and Videos, Inc. v. Metropolitan Dade Co., 33 F. Supp.2d 1364, 1374 (S.D. Fla. 1999) (holding that where, *inter alia*, the party seeking the injunction had a high probability of succeeding on the merits of its claim, court would "not demand that Plaintiffs provide any security for the issuance of this preliminary injunction."); Arkansas Best Corp. v. Carolina Freight Corp., 60 F. Supp.2d 517, 521 (W.D.N.C. 1999) ("[c]ircumstances in the instant case warrant the posting of only a nominal bond in that Plaintiffs have shown a strong likelihood of success on the merits."); Sluiter v. Blue Cross and Blue Shield of Michigan, 979 F. Supp. 1131, 1145 (E.D. Mich. 1997) (no security required because of "the strong likelihood of plaintiffs' success on the merits"); Specialty Chemicals & Services v. Chandler, 1988 WL 618583, *7 (N.D. Ga. Sept. 29, 1988) (plaintiff need not post a bond because it had "shown a likelihood of prevailing on the merits of the case and [was] sufficiently solvent to pay defendants' costs should it lose at trial").

* * *

In sum, defendants will suffer no harm from the issuance of the limited injunction sought and plaintiffs have proposed numerous safeguards which will more than adequately protect defendants' interests. Under these circumstances, no security bond (or at most a nominal bond) is appropriate.

## II.

### IN THE EVENT THE COURT DETERMINES THAT SOME SECURITY IS REQUIRED, A $250,000 BOND IS APPROPRIATE

In the event the Court determines that security should be posted, the Court has full discretion to determine "the sum [it] deems proper." See Carillon Importers, Ltd. v. Frank Pesce Int'l Group Limited, 112 F.3d 1125, 1127 (11th Cir. 1997) (citation omitted) ("[t]he amount of an injunction bond is within the sound discretion of the district court"); Productos Carnic, S.A. v. Central American Beef and Seafood Trading Co., 621 F.2d 683, 687, n.6 (5th Cir. 1980) ("F.R.Civ.P. 65(c) gives the District Court broad discretion in setting the amount of the bond"); Corrigan Dispatch Co. v. Casa Guzman, S.A., 569 F.2d 300, 303 (5th Cir. 1978) ("[t]he amount of security required is a matter of discretion for the trial court; it may elect to require no security at all").

Although the undisputed evidence establishes that no bond is warranted here, in the event the Court determines that some security is required, $250,000 is an appropriate amount because, as set forth above, there is no likelihood of harm to defendants, plaintiffs have demonstrated a strong likelihood of success on the merits, and plaintiffs have resources sufficient to pay any potential damages award.[1]

---

[1] Any further calculation of the amount of security to which defendants might be entitled is precluded by defendants' failure to provide to the Court a copy of the purported contract between Zomba and the Group.

In their opposition papers, the Group Members' lawyer makes the non-sensical suggestion that this Court should set a bond in the amount of $100,000,000 because plaintiffs are seeking damages in that amount. (Ritholz Dec. ¶21) Plaintiffs are seeking that measure of damages because it accurately reflects the financial losses which would result if the Group Members failed to honor their contractual obligations, including the delivery of multiple albums. By contrast, defendants' absurd figure bears no relationship whatsoever to any damages that defendants theoretically might suffer as the result of a wrongfully issued injunction -- which is the standard for determining the need for, or amount of, a security bond. See Fed. R. Civ. P. 65(c) (requiring that security be "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.") Accordingly, defendants' suggested amount should be rejected, and the maximum amount of any bond should be $250,000.

### Conclusion

For all the reasons stated herein, plaintiffs respectfully request that this Court order that no security is required, or, in the alternative, that security be posted pursuant to Fed. R. Civ. P. 65(c) in the amount of $250,000.

Dated: Orlando, Florida
November 15, 1999

Respectfully submitted,

William B. Wilson, Esquire
Florida Bar No.: 153167
HOLLAND & KNIGHT LLP
200 S. Orange Street, Suite 2600
Post Office Box 1526
Orlando, Florida 32802-1526
Telephone No.: (407) 425-8500
Facsimile No.: (407) 244-5288

-- and --

Steven M. Hayes, Esquire
Orin Snyder, Esquire
PARCHER, HAYES & SNYDER, LLP
500 Fifth Avenue
New York, NY 10110
Telephone No.: (212) 382-0200
Facsimile No.: (212) 302-4371

ATTORNEYS FOR PLAINTIFFS
BMG ENTERTAINMENT and BMG
ARIOLA MUENCHEN GmbH

-- and --

_____
William B. Pringle, III, Esquire
Florida Bar No.: 077986
WILLIAM B. PRINGLE, P.A.
390 North Orange Avenue
Suite 2100
Orlando, FL 32801
Telephone No.: (407) 843-3701
Facsimile No.: (407) 650-1800

-- and --

J. Cheney Mason, Esquire
Florida Bar No.: 131982
J. CHENEY MASON, P.A.
390 North Orange Avenue
Suite 2100
Orlando, FL 32801
Telephone No.: (407) 843-5785
Facsimile No.: (407) 422-6858

-- and --

PARKER CHAPIN FLATTAU & KLIMPL, LLP
Michael D. Friedman, Esq.
Sharon H. Stern, Esq.
1211 Avenue of the Americas
New York, NY 10036
Telephone No.: (212) 704-6000
Facsimile No.: (212) 704-6288

ATTORNEYS FOR PLAINTIFFS TRANS
CONTINENTAL RECORDS, INC., TRANS
CONTINENTAL ENTERTAINMENT, INC. and
LOUIS J. PEARLMAN

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true copy of the foregoing was furnished by U.S. Mail, postage prepaid, to: **Gerard E. Harper, Esquire**, Paul, Weiss, Rifkind, Wharton & Garrison, 1258 Avenue of the Americas, New York, NY 10019-6064; **Jeffrey D. Keiner, Esquire** and **Frank Hamner, Esquire**, Gray, Harris & Robinson, P.S., P.O. Box 3068, Orlando, Florida 32802-3068, *Attorneys for Defendants Zomba Recording Corporation and Clive Calder*; and **Helene Freeman, Esquire**, and **Richard F. Albert, Esquire**, Dorsey & Whitney, LLP, 250 Park Avenue, 15th Floor, New York, New York 10177 and **David B. King, Esquire** and **Mayanne Downs, Esquire**, King Blackwell & Downs, P.S., 25 East Pine Street, Post Office Box 1631, Orlando, Florida 32802-1631, *Attorneys for James Lance Bass, Joshua Scott Chasez, Joseph Anthony Fatone, Jr., Christopher Alan Kirkpatrick, and Justin Randall Timberlake* this 15th day of November, 1999 by 4:00pm.

HOLLAND & KNIGHT LLP

William B. Wilson, Esquire
Florida Bar. No.: 153167
Suite 2600
200 S. Orange Avenue
Orlando, FL 32801

Attorneys for Plaintiffs BMG Entertainment and BMG Ariola Muenchen GmbH

--and--

WILLIAM B. PRINGLE, P.A.

William B. Pringle, III, Esquire
Florida Bar No.: 077986
390 North Orange Avenue
Suite 2100
Orlando, FL 32801

Attorney for Plaintiffs
Trans Continental Records, Inc., Trans Continental Entertainment, Inc. and Louis J. Pearlman