UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA -- ORLANDO DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TRANS CONTINENTAL RECORDS, INC., BMG     :
ENTERTAINMENT, BMG ARIOLA MUENCHEN     :
GmbH, TRANS CONTINENTAL ENTERTAINMENT,     :
INC., and LOUIS J. PEARLMAN,     :
    :
    :
                 **Plaintiffs,**     :
    :
           v.     :
    :
    :
ZOMBA RECORDING CORPORATION, CLIVE     :
CALDER, JAMES LANCE BASS, JOSHUA SCOTT     :
CHASEZ, JOSEPH ANTHONY FATONE, JR.,     :
CHRISTOPHER ALAN KIRKPATRICK, and JUSTIN     :
RANDALL TIMBERLAKE,     :
    :
                **Defendants.**     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No.
99-1282-Civ-Orl-22C

## DEFENDANTS' JOINT MEMORANDUM OF LAW ADDRESSING THE APPROPRIATE SECURITY TO BE POSTED SHOULD THE COURT ISSUE PLAINTIFFS' REQUESTED PRELIMINARY INJUNCTION

### Preliminary Statement

Plaintiffs' argument that no security bond would be needed if this Court were to issue the unprecedented and sweeping preliminary injunction they demand -- an argument made despite plaintiffs' own complaint seeking $100 million in alleged compensatory damages -- well illustrates plaintiffs' overreaching in this action.

The argument is specious. Preliminary injunctive relief would have immediate and severe economic consequences for 'N SYNC and Zomba. In the next few months alone, were this Court to grant the relief plaintiffs seek, 'N SYNC would immediately lose existing opportunities for recording, touring and performing that would cost 'N SYNC *at least* $50

53

million in income, income that may never be recaptured. This figure does not include the loss to 'N SYNC of potential ancillary revenues even in that short period of time, and cannot begin to measure the other and further losses that 'N SYNC will suffer beyond the next few months from being denied the opportunity to exploit their career at this peak. 'N SYNC faces the loss of something that plaintiffs cannot fully bond: their career.

Strangely, despite naming Zomba as their "lead" defendant, plaintiffs' argument on security *never once* mentions the injury that Zomba will sustain from a preliminary injunction. Not one of their contentions, and none of their hollow offers in lieu of security, addresses the substantial injury that Zomba would suffer from an injunction restraining Zomba from performing the terms of the Zomba Recording Agreement. Since plaintiffs claim damages of $100 million based on the alleged breach of their recording agreement, it surely follows that Zomba's damages in the event of a wrongful injunction would be very substantial. In fact, in addition to the millions of dollars that Zomba has already invested in 'N SYNC, an injunction preventing Zomba from releasing an 'N SYNC album in the next months would result in lost profits to Zomba of at least $50 million.

Accordingly, if this Court were to issue the injunction that plaintiffs demand, the Court should order plaintiffs -- and not only the BMG plaintiffs but also specifically Transcon and Pearlman personally -- to post security of $50 million for 'N SYNC and $50 million for Zomba, without prejudice to the right of each to seek an increase in this security in the event that this action is not resolved by April of 2000.

Plaintiffs' "bullet point" arguments against being required to post any security at all are unpersuasive:

●      Plaintiffs' argument that 'N SYNC may continue to enjoy "substantial benefits" from their "ongoing career activities" is disingenuous:  Although they do not disclose as much to this Court, plaintiffs have demanded of 'N SYNC and Zomba, recently and in writing, that 'N SYNC *immediately cease all  performing and recording under their own name except under plaintiffs' auspices* (and egregious contracts).  And the sweeping injunction they seek demands no less.  Plaintiffs' argument thus amounts to a claim that 'N SYNC may continue to enjoy "substantial benefits" only by working for plaintiffs, which they refuse, and cannot be forced, to do.

●      Plaintiffs' argument that expedited proceedings will eliminate any injury is just wrong as a matter of fact -- an unpersuasive afterthought from plaintiffs who did nothing for four months after 'N SYNC unambiguously and unconditionally terminated their contract. It takes months of planning and advance promotion to release a major studio album -- all of which planning and promotion plaintiffs' proposed injunction would categorically prohibit, thereby preventing the release of 'N SYNC's next album in the first quarter of 2000.

●      Plaintiffs' offer that Transcon -- a company that has already misappropriated 'N SYNC's name and millions of their dollars -- will "escrow" some unidentified "income" in lieu of security is untenable.  Plaintiffs do not identify the source of this alleged future revenue; it appears that Transcon contemplates that, in the event of an injunction, 'N SYNC will simply go to work for Transcon -- something, again, that 'N SYNC refuses, and cannot lawfully be required, to do.

- Plaintiffs' boasting of BMG Music's financial resources -- their claim that BMG Music is a "multi-billion dollar company" that is good for any judgment -- amounts to an erroneous argument that the rules do not apply to the rich. But the objectives of a security bond -- objectives never mentioned in plaintiffs' brief but equally applicable to the rich as to others -- are to assure that injunctions are not lightly sought and that enjoined parties have immediate access to the damages awarded in the event that the injunction is found to have been wrongfully issued. Equally important, we are prepared to show, on a motion addressed to the pleadings, that the "billion dollar" BMG Music *has no claim for relief against any defendant* under federal or state law, because BMG Music owns no trademark, has no contract with 'N SYNC, and has no rights to enforce here. Thus, *at most*, the plaintiffs left for this action are a German company with assets only in Germany (BMG Ariola), plus Transcon and Pearlman, the assets of which are unknown.

- Plaintiffs' offer of a stipulation that the bond will not limit damages is no security at all. Such an offer places no burden on plaintiffs in seeking an injunction, and seriously prejudices 'N SYNC and Zomba by stripping them of the security to which the federal rules entitle them.

- Finally, plaintiffs' suggestion that 'N SYNC may simply record with RCA is no answer to this Court's request for a statement on the appropriate security for the injunction plaintiffs demand. This argument is nothing but a request for surrender, and worse. 'N SYNC does not have any recording agreement, and has *never* had any recording agreement, with RCA. RCA owes nothing to 'N SYNC -- nothing at all -- by way of a commitment to release albums in the U.S., or to pay 'N SYNC for recording in keeping with recording agreements with U.S.

record companies. By contrast, 'N SYNC does have a recording agreement with Zomba, which is obligated to 'N SYNC to release albums in the U.S., paid for in U.S. currency at U.S. record royalty rates on U.S. accounting schedules. To propose that 'N SYNC eliminate its injury from an injunction by recording with RCA is to suggest that, rather than having plaintiffs post the security required by the federal rules, 'N SYNC should simply confess judgment in plaintiffs' favor, disregard its contractual obligations to Zomba, work under a former manager who violated their trust and confidence and misappropriated their name and their money, and record for a company with which 'N SYNC has no contract.

The plaintiffs' claim that 'N SYNC would suffer no loss as a result of the injunction they seek is emblematic of their callous attitude that the young members of 'N SYNC are merely engines of revenue production, who should accept their exploitation and dutifully fill the plaintiffs' bank accounts. This Court should reject that argument, and, if it considers granting injunctive relief (which we respectfully submit is wholly unwarranted), the Court should require plaintiffs to post a bond of not less than $100 million.

### Statement of Facts

Plaintiffs offer no evidentiary support for the arguments they make on the security required for the extraordinary injunction they demand. Accompanying this memorandum are the declarations of Ivan Gavin and Adam Ritholz detailing the very substantial damages that Zomba and 'N SYNC will sustain in the event that an injunction issues. Among other things, these declarations underscore the severity of plaintiffs' own demand. Plaintiffs seek to prevent 'N

SYNC from using their own name in *any* public way except under plaintiffs' control, and to prevent 'N SYNC from performing, touring, making television appearances, or recording.

The damages defendants would suffer in the event of an injunction consistent with this demand are great.  In brief, with respect to 'N SYNC, the damages from a wrongful injunction in this action -- due to lost recording and publishing royalties, lost tour revenues and endorsements, and lost merchandise royalties -- are estimated to be $50 million over the next eight months.  With respect to Zomba, such damages will amount to the revenues to be made from the album now scheduled to be released within the next few months, plus the millions of dollars that Zomba has already invested in 'N SYNC -- a total of at least $50 million.  'N SYNC and Zomba are entitled to security for these damages.

## Argument

### I.

### Plaintiffs Must Be Required To Post a Bond

Federal Rule of Civil Procedure 65(c) states that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant . . . for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."  Absent exceptional circumstances not present here, a bond must be posted when preliminary injunctive relief is granted, and it is reversible error not to require that plaintiffs do so. *See, e.g., District 17, United Mine Workers of America v. A & M Trucking, Inc.*, 991 F.2d 108, 110 (4th Cir. 1993); *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 210-11 (3d Cir. 1990); *see also Gateway E. Ry. v. Terminal R.R. Ass'n,* 35

F.3d 1134, 1141 (7th Cir. 1994); *Phillips v. Chas. Schreiner Bank,* 894 F.2d 127, 130-31 (5th Cir. 1990); *Chemlawn Servs. Corp. v. GNC Pumps, Inc.,* 823 F.2d 515 (Fed. Cir. 1987).[1]

    'N SYNC and Zomba are entitled to the protections conferred by a security bond. There are two principal purposes served by Rule 65(c)'s bonding requirement, each of which applies with special force in this action.

    First, requiring plaintiffs to post a bond serves to ensure that plaintiffs do not seek injunctive relief without very good cause. *See Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.,* 16 F.3d 1032, 1037 (9th Cir. 1994) (fact that a wrongfully enjoined defendant will usually recover damages in the amount of the security bond "discourag[es] parties from requesting injunctions based on tenuous legal grounds"); *National Kidney Patients Ass'n v. Sullivan,* 958 F.2d 1127, 1134 (D.C. Cir. 1992) (same); *Hoxworth,* 903 F.2d at 210 (same); *Coyne-Delaney Co. v. Capital Dev. Bd.,* 717 F.2d 385, 392 (7th Cir. 1983) (same).

    This rationale for requiring an injunction bond applies at least as forcefully to wealthy plaintiffs as it does to plaintiffs of more limited resources -- and perhaps even more so. That plaintiffs are wealthy does not relieve them of the obligation to demonstrate their conviction in their legal claims by putting their money where their mouths are. *See, e.g., Maryland Dept.*

---

[1]Plaintiffs' own cases demonstrate that a bond is required except in the most exceptional circumstances, typically involving governmental or other public interests. Thus, in one of plaintiffs' citations, *Daniels v. School Bd. of Brevard County,* 985 F. Supp. 1458, 1462 (M.D. Fla. 1997), the court based its refusal to order a bond on the fact that the suit was "a form of public interest litigation." In another, *University Books and Videos, Inc. v. Metropolitan Dade County,* 33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999), defendant was a municipality. Curiously, the other two cases on which plaintiffs rely -- *Cabral v. Olsen Corp.,* 843 F. Supp. 701 (M.D. Fla. 1994) and *Sundor Brands, Inc. v. Borden, Inc.,* 653 F. Supp. 86 (M.D. Fla. 1986) -- held that a bond was required based on the facts and circumstances of the case.

*of Human Resources v. United States Dept. of Agriculture*, 976 F.2d 1462, 1483 (4th Cir. 1992) (vacating preliminary injunction due to district court's failure, in light of its finding that plaintiff could pay any judgment entered against it, to require an injunction bond); *see also* E. Morton, *Security for Interlocutory Injunctions Under Rule 65(c)*, 46 Hastings L.J. 1863 (1995). Indeed, plaintiff BMG Music's size and wealth argue for requiring security in the full amount of defendants' damages for wrongful injunction; a nominal bond would hardly chill an entity having such resources from improvidently seeking injunctive relief.

Here, plaintiffs are seeking injunctive relief to enforce (1) a contract (the Transcon Recording Agreement) that was terminated in accordance with its explicit terms four months before plaintiffs sought any relief, and (2) a putative trademark right in 'N SYNC's own name based on a terminated contract, a terminated license personally obtained by a manager without the knowledge or consent of the persons on whose behalf he was bound to act and paid for by those persons, and a highly disputed claim that plaintiffs are responsible for the good will of the name. In such circumstances, the need to assure that plaintiffs are prepared to post substantial security for the relief they demand -- security coincident with the damages they allege -- is only heightened.

The second purpose of a Rule 65(c) bond is to guarantee that a wrongfully enjoined party will be able readily to collect its damages. *See Continuum Co. v. Incepts, Inc.,* 873 F.2d 801, 802 (5th Cir.) (injunction bond "assures the enjoined party that it may readily collect damages from the funds posted or the surety provided in the event that it was wrongfully enjoined, without further litigation"), *modified on unrelated grounds,* 883 F.2d 333

(5th Cir. 1989). 'N SYNC and Zomba are entitled to that certainty. Waiving the bond requirement -- or requiring only a nominal bond -- deprives defendants of the "full measure of a bond's protection." Note, *Recovery for Wrongful Interlocutory Injunctions Under Rule 65(c)*, 99 Harv. L. Rev. 828, 832 (1986). 'N SYNC and Zomba should not be required to bear the risk that plaintiffs may be judgment-proof or seek to evade execution of a judgment. *Id; cf. Little Tor Auto Ctr. v. Exxon Co.*, 822 F. Supp. 141, 143 (S.D.N.Y. 1993) (noting that absent a bond, the victim of an ill-advised temporary restraining order may face difficulties in obtaining recompense).

For this reason, the bond must be sufficient to cover the losses 'N SYNC and Zomba would suffer if the requested preliminary injunctive relief were granted. *See Cagan v. Mutual Benefit Life Ins. Co.*, 28 F.3d 654, 656 (7th Cir. 1994); *Blumenthal v. Merrill Lynch*, 910 F.2d 1049, 1056 (2d Cir. 1990); *cf. Nintendo of America, Inc.*, 16 F.3d 1032 (awarding defendants full $15 million bond for lost profits on sales of its "Game Genie" due to wrongly issued injunction); *Sunbeam Prods., Inc. v. The West Bend Co.*, 39 U.S.P.Q.2d 1545, 1555 (S.D. Miss. 1996) (requiring $3.75 million bond on strength of "all the testimony adduced in regard to the potential damage that will be sustained by Defendant if the Court" grants the requested injunctive relief).

That 'N SYNC and Zomba will suffer immediate and severe damages from any injunction is obvious -- and plaintiffs' conclusory arguments to the contrary do not show otherwise. As set forth in the accompanying Ritholz declaration, 'N SYNC has *already* lost one $3.5 million offer from a tour sponsor due to the mere possibility that the injunction might issue,

and, if the injunction does issue, 'N SYNC stands to lose $50 million more in recording and publishing royalties, tour revenues and endorsements, and merchandise royalties -- figures based on past performance and income that 'N SYNC would have earned but for plaintiffs' egregious and unconscionable contracts.  Likewise, as demonstrated by the accompanying declaration of Ivan Gavin, if Zomba were enjoined from recording and releasing an 'N SYNC album that it otherwise would release early next year, Zomba would lose at least $50 million.  These sums -- readily calculated in direct refutation of plaintiffs' claim to irreparable injury -- do not take account of the one and only imponderable and immeasurable injury that this motion threatens: the potentially devastating effect on 'N SYNC's career.

Plaintiffs' arguments in support of their untenable position that no security bond is required here are entirely without merit.  First, plaintiffs' empty gestures -- offering to place Transcon's income in escrow, offering to stipulate that the amount of the bond will not limit the damages the defendants may recover in the event of a wrongful injunction, and insisting that they have sufficient assets to cover any harm to defendants -- are meaningless and no substitute for security.  Transcon's offer to place unidentified and unquantified income into escrow is especially meaningless, for the purported future income stream is unknown, and given what is known of Transcon's dubious accounting practices, inherently unknowable.  Similarly, plaintiffs' other assurances -- of their willingness to stipulate that defendants' damages will not be capped by the injunction bond and of BMG Music's solvency -- do not deter plaintiffs from seeking an injunction on pretextual legal grounds or provide 'N SYNC and Zomba with certainty that they will be able to collect a money judgement in their favor.  *See, e.g., Little Tor Auto Ctr.*, 822 F.

Supp. at 144 (order requiring plaintiffs to waive the rule limiting defendants' damages for wrongful injunction is "not a panacea").

Second, plaintiffs' argument that the requested injunction will permit 'N SYNC to pursue their career by performing live is belied by plaintiffs' own cease and desist letters demanding that 'N SYNC stop performing anywhere using their name, and by plaintiffs' publicly announced "scorched earth" policy that unless 'N SYNC returns to plaintiffs the group will "cease to exist."  Moreover, that 'N SYNC may passively earn some money while an injunction is in place does not in any way address the damages that 'N SYNC will sustain from the lost opportunities for very substantial income from recording and performing -- and does not address the injury to Zomba at all.

Third, plaintiffs' "welcoming" of an expedited trial -- after sitting on their putative rights and doing nothing for four months after 'N SYNC unambiguously and unconditionally terminated their contract and after Zomba exercised its legal right to contract with 'N SYNC -- is also an empty gesture, and an argument available in every case.  Plaintiffs' sudden desire for expedition does not take account of the planning and promotion needed to launch 'N SYNC's next album.  Indeed, an injunction would only further delay the release of that album (which ideally should have been released before the end of this year) for months beyond the first quarter of next year.  Plaintiffs nowhere dispute that such a release is important to 'N SYNC's career, and indeed, they had been planning prior to the termination for an even earlier release of an album.

Fourth, plaintiffs' argument that 'N SYNC can relieve its injury by recording with RCA is nothing short of bizarre -- and, again, completely ignores Zomba and the Zomba Recording Agreement.  The argument is bizarre because plaintiffs are asking to be relieved of Rule 65(c)'s bonding requirement, for an unprecedented and sweeping injunction, based on a demand that 'N SYNC simply capitulate.  That plaintiffs cite no law for this odd argument is unsurprising.  Equally important, the argument suggests that plaintiffs now wish to offer something -- a contract with a U.S. record company -- which plaintiffs were obligated but failed to arrange when their contracts were in effect, and which now is too late because the offer would amount to an improper interference with 'N SYNC's obligations under the Zomba Recording Agreement.  Even if 'N SYNC were prepared to consider such a course of action -- and 'N SYNC is not prepared to do so -- the argument overlooks the damages to Zomba for which Zomba is entitled to security.

Finally, plaintiffs' argument that no bond is required because they have an "overwhelming" likelihood of success on the merits is wishful thinking.  Consider plaintiffs' claims here:

• an alleged breach of a recording contract with Transcon, procured by 'N SYNC's own manager Pearlman in breach of his fiduciary duty, which was terminated under its express terms for failure to obtain a recording agreement with a U.S. record company -- when the evidence is beyond dispute that plaintiffs failed to obtain a recording agreement for 'N SYNC with a U.S. record company;

- an alleged breach of other contracts procured by Pearlman from 'N SYNC in breach of his fiduciary duty to them, various of which contracts plaintiffs did not even disclose to this Court in seeking to enforce only certain of them; and

- alleged trademark claims (1) lacking any registered trademark owned by any plaintiff; and (2) based on theories arising out of (a) a terminated recording contract, (b) a limited-use license wrongfully procured by Pearlman in his personal name and unenforceable by him except as used in connection with the five members of 'N SYNC, and (c) evidence which, at a minimum, sharply disputes plaintiffs' claims to having created the good will in the name.

These circumstances do not show any likelihood of success on the merits, let alone an "overwhelming" one.  The cases plaintiffs cite in support of the underlying legal proposition that a bond need not be posted where plaintiffs have an overwhelming likelihood of success on the merits are easily distinguished: each involves some fact or circumstance in addition to a likelihood of success on the merits that militates against requiring that security be posted. *See Sluiter v. Blue Cross & Blue Shield of Michigan*, 979 F. Supp. 1131, 1144 (E.D. Mich. 1997) (insurer enjoined to provide treatment to breast cancer patients who are not required to post bond due to their likelihood of success on the merits in combination with their demonstrated financial inability to raise security); *University Books & Videos, Inc. v Metropolitan Dade County,* 33 F. Supp. 2d 1364, 1374 (M.D. Fla. 1998) (refusing to require bond because the enjoined party is a city or municipality, because demanding the bond would injure the constitutional rights of the party from whom the bond is sought and because the party seeking the injunction has a high probability of success on the merits).  No such extraordinary facts or circumstances are present here.

Plaintiffs' argument that no security is necessary where defendants cannot possibly suffer any harm as a result of the injunction also misses the point. The cases plaintiffs cite -- *Texaco, Inc. v. Leavitt*, 1994 WL 129763 (D. Mass. Apr. 8, 1994) (no bond required because defendants who no longer use the Texaco mark in connection with their business are not harmed by injunction prohibiting them from doing so) and *Specialty Chems. & Servs., Inc. v. Chandler*, 1988 WL 618583 (N.D. Ga. Sept. 29, 1988) (no bond required because enjoining defendant from engaging in illegal conduct cannot cause any harm) -- have no relevance at all where, as here, defendants have amply demonstrated the harm that would befall them as a result of the requested injunctions.

Plaintiffs' litany of reasons why security is not needed here underscores that, for plaintiffs, this case is all about money -- and that plaintiffs desire to hold onto theirs at all costs. It is evident that they seek preliminary injunctive relief in the hope of frightening the young talent of 'N SYNC so much that they continue working under unconscionable contracts -- and of intimidating independent record labels such as Zomba into refusing to provide "rebellious" artists with a competitive alternative.

## Conclusion

If this Court were to grant plaintiffs' requested preliminary injunction, this Court should, for the reasons set forth above and in the accompanying declarations of Adam Ritholz and Ivan Gavin, require plaintiffs to submit a bond pursuant to Fed. R. Civ. P. 65(c) in an amount of not less than $100 million to secure payment of 'N SYNC's and Zomba's anticipated

damages, with leave to defendants to seek additional security in the event that any injunction

remains in force past April 2000.

Respectfully Submitted,

KING BLACKWELL & DOWNS, P.A.

By: _____

    David B. King (Bar No. 0093426)
25 East Pine Street
Orlando, Florida 32802
(407) 422-2472

DORSEY & WHITNEY LLP
Helene Freeman
Richard Albert
250 Park Avenue
New York, New York 10177
(212) 415-9200
Attorneys for Defendants James Lance Bass, Joshua Scott Chasez, Joseph Anthony
Fatone, Jr., Christopher Alan Kirkpatrick, and Justin Timberlake

    -- and --

GRAY, HARRIS & ROBINSON, P.A.

By: _____

    Jeffrey D. Keiner (Bar No. 181678)
201 East Pine Street, Suite 1200
Post Office Box 3068
Orlando, Florida 32802-3068
(407) 843-8880

PAUL, WEISS, RIFKIND, WHARTON &   GARRISON
Gerard E. Harper
Melanie H. Stein
Robyn Tarnofsky
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
Attorneys for Defendants Zomba Recording Corporation and Clive Calder.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was furnished by facsimile and U.S. Mail, postage prepaid, to: **J. Cheney Mason, Esq. and William B. Pringle, III, Esq.**, 390 North Orange Avenue, Suite 2100, Orlando, FL 32801; **Michael D. Friedman, Esq. and Sharon H. Stern, Esq.**, 1211 Avenue of the Americas, New York, NY 10033, Attorneys for Plaintiffs Louis J. Pearlman and Trans Continental Records, Inc; **William B. Wilson, Esq.**, 200 South Orange Avenue, Suite 2600, Orlando, Florida, 32802; and **Stephen M. Hayes, Esq.**, 500 Fifth Avenue, 38th Floor, New York, NY 10110, Attorneys for Plaintiffs BMG Entertainment and BMG Ariola Muenchen Gmbh, this 18th day of November, 1999.


GRAY, HARRIS & ROBINSON, P.A.

By: _____
    Jeffrey D. Keiner (Bar No. 181678)
201 East Pine Street, Suite 1200
Post Office Box 3068
Orlando, Florida 32802-3068
(407) 843-8880

PAUL, WEISS, RIFKIND, WHARTON &   GARRISON
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Attorneys for Defendants Zomba Recording Corporation and Clive Calder.