**FILED**

Date 11-18-99  Time

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA -- ORLANDO DIVISION
--------------------------------------- x
TRANS CONTINENTAL RECORDS, INC., BMG          :
ENTERTAINMENT, BMG ARIOLA MUENCHEN             :  Civil Action No.
GmbH, TRANS CONTINENTAL ENTERTAINMENT,         :  99-1282-Civ-Orl-22C
INC., and LOUIS J. PEARLMAN,                   :
                                               :  DECLARATION OF
                        Plaintiffs,            :  IVAN GAVIN
                                               :
              v.                               :
                                               :
ZOMBA RECORDING CORPORATION, CLIVE             :
CALDER, JAMES LANCE BASS, JOSHUA SCOTT         :
CHASEZ, JOSEPH ANTHONY FATONE, JR.,            :
CHRISTOPHER ALAN KIRKPATRICK, and JUSTIN       :
RANDALL TIMBERLAKE,                            :
                                               :
                        Defendants.            :
--------------------------------------- x

Ivan Gavin, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1. I am Senior Vice President for Finance and Commercial Operations of Zomba Recording Corporation ("Zomba"). I submit this declaration to quantify the damages Zomba would suffer if this Court were to issue the preliminary injunction plaintiffs have requested. I understand that the separate declaration of Adam E. Ritholz quantifies, to the extent possible, the damages 'N SYNC would suffer.

2. I have been advised by counsel that a trial on the merits of plaintiffs' claims is not likely to begin before April of next year, and that if this Court issued the preliminary injunction requested by plaintiffs, we could not release any 'N SYNC albums under Zomba's Jive label until we prevailed at trial, which I understand could be several months later.

54

3. Zomba plans to release an 'N SYNC single before the end of this year and an 'N SYNC album during the first quarter of next year. In preparation for these releases, Zomba has expended several million dollars in advance payments and production and recording costs, and in marketing and promotional efforts. The requested preliminary injunction would substantially delay these anticipated releases and would substantially devalue Zomba's investments to date.

4. Should a preliminary injunction be issued, 'N SYNC and Zomba would lose the opportunity to release 'N SYNC's next album on schedule -- with the resulting loss to Zomba of all or most of the profits it reasonably would have been expected to earn from the first 'N SYNC album produced on the Jive Label, depending on the length of the delay caused by the injunction.

5. According to the gold and platinum certifications used by the Recording Industry Association of America, 'N SYNC's United States debut album has sold approximately 7 million copies in this country since its release in March 1998, and 'N SYNC's Christmas album, released in November 1998, has sold 2 million copies.

6. Since 'N SYNC's popularity has sky-rocketed over the past two years, I expect that the revenues from a new release at this time would at least equal and would probably surpass those already achieved by the group.

7. My conservative estimate is that 'N SYNC's next album would sell a minimum of 7 million copies in the United States and a minimum of another 4 million copies internationally. I expect that the aggregate net profit to Zomba from sales of the next 'N SYNC album will be at least $50 million.

8.    While Zomba might recoup some of its lost profits were it eventually permitted to record and release 'N SYNC albums, the lapse of time between 'N SYNC's last album and any future albums would inevitably have a negative impact on sales. Particularly given that 'N SYNC draws most of its fans from the notoriously fickle teen and preteen markets, a lengthy period between releases during which 'N SYNC would be out of the public eye and ear would result in lost momentum and, at the very least, diminished selling power. The more likely scenario is that any substantial delay in releasing 'N SYNC's next album would cause the demand for the group's music to fall precipitously and likely render that album and all future albums significantly less profitable.

9.    In sum, it is my conservative estimate that the preliminary injunction sought by plaintiffs would cause Zomba to lose at least $50 million in profits prior to a judgment in an April 2000 trial on the merits.

10. Of course, should there be no final judgment in this matter within the next six months, I would need to consider the effects of that further delay -- and our resulting inability to release a second album -- on Zomba's damages. A bond should be set in the amount of $50 million in favor of the Zomba defendants, with leave to seek an increase in the bond if an injunction remains in effect past April of 2000.

Executed in New York City, New York, this 17th day of November, 1999.

_____
Ivan Gavin