THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TRANS CONTINENTAL RECORDS, INC.,
BMG ENTERTAINMENT, BMG ARIOLA
MUENCHEN GmbH, TRANS CONTINENTAL
ENTERTAINMENT, INC., and LOUIS J.
PEARLMAN,

  Plaintiffs,

vs.

ZOMBA RECORDING CORPORATION,
CLIVE CALDER, JAMES LANCE BASS,
JOSHUA SCOTT CHASEZ, JOSEPH
ANTHONY FATONE, JR., CHRISTOPHER
ALAN KIRKPATRICK, and JUSTIN
RANDALL TIMBERLAKE,

  Defendants.
_____/

CIVIL ACTION NO.
99-1282-CIV-ORL-22C

### ANSWER AND AFFIRMATIVE DEFENSES OF PLAINTIFFS/COUNTER-DEFENDANTS TRANS CONTINENTAL RECORDS, INC., TRANS CONTINENTAL ENTERTAINMENT, INC. AND LOUIS J. PEARLMAN

Plaintiffs, TRANS CONTINENTAL RECORDS, INC., TRANS CONTINENTAL ENTERTAINMENT, INC. and LOUIS J. PEARLMAN, (collectively the "Trans Continental Plaintiffs") hereby file their Answer and Affirmative Defenses directed to the Counter Claims of Defendants, JAMES LANCE BASS, JOSHUA SCOTT CHASEZ, JOSEPH ANTHONY FATONE, JR., CHRISTOPHER ALAN KIRKPATRICK, JUSTIN RANDALL TIMBERLAKE (collectively the "Group Member Defendants") as follows:

1. Paragraph 109. Admitted that the Group Member Defendants have, to date, performed under the name 'N Sync.

2. Paragraph 110. Admitted that the Group 'N Sync was formed during the summer of 1995.

3. Paragraph 111. Admitted that on August 1, 1996, TRANS

CONTINENTAL RECORDS, INC. entered into a License Agreement with BMG ARIOLA MUENCHEN GmbH. Admitted that 'N Sync has achieved great success performing and selling records first in Europe and then in the United States.

4. Paragraph 112. Without knowledge and therefore denied.

5. Paragraph 113. Admitted that Trans Continental Entertainment, Inc. served as 'N Sync's Manager until the Group Member Defendants repudiated their agreements with the Trans Continental Plaintiffs. Admitted that Trans Continental provided substantial financial backing, advancing the group's expenses including fees for vocal coaches and choreographers as well as renting a home for certain Group Member Defendants.

6. Paragraph 114. Denied.

7. Paragraph 115. Admitted that Pearlman repeatedly told the Group Member Defendants that his primary interest was to see them become successful, and that he considered them to be a member of the family.

8. Paragraph 116. Denied.

9. Paragraph 117. Denied.

10. Paragraph 118. Admitted that Pearlman filed an application to secure the trademark rights to the name 'N Sync.

11. Paragraph 119. Admitted that in or about October, 1995, Pearlman formed 'N Sync Productions, Inc. Admitted that the Group Member Defendants and Pearlman executed a Stockholders' Agreement. Admitted that 'N Sync Productions, Inc. received all income 'N Sync earned through live performances and other non-merchandising

sources. Admitted that Pearlman and Trans Continental received 3/8 of the share of 'N Sync Productions, Inc. and the remaining 5/8 of its shares were owned by the Group Member Defendants.

12. Paragraph 120. Admitted that the Group Member Defendants executed an irrevocable proxy in favor of Pearlman. Admitted that the 'N Sync Productions, Inc. Stockholders' Agreement speaks for itself.

13. Paragraph 121. Denied.

14. Paragraph 122. Admitted that in 1999, Pearlman received salary and bonuses from 'N Sync Productions, Inc. in excess of $1,000,000.00.

15. Paragraph 123. Admitted that in or about October, 1995, Pearlman also created another corporation called 'N Sync, Inc. in which he and each of the members of 'N Sync held a 1/6 interest. Admitted that the 'N Sync, Inc. documents speak for themselves.

16. Paragraph 124. Admitted that 'N Sync Productions, Inc. and Trans Continental Records, Inc. entered into an agreement in or about January, 1996.

17. Paragraph 125. Admitted that 'N Sync Productions, Inc. entered into an agreement with Trans Continental Records, Inc. in or about January, 1996.

18. Paragraph 126. Admitted that Pearlman procured an exclusive license to use the trade name and trademark 'N Sync. Admitted that the terms of this Exclusive License speak for itself.

19. Paragraph 127. Admitted that in or about April, 1996, the Group Member Defendants entered into a Management Agreement

with Trans Continental Entertainment, Inc.

20. Paragraph 128. Denied.

21. Paragraph 129. Denied.

22. Paragraph 130. Admitted that the Group Member Defendants entered into a Management Agreement with Trans Continental Entertainment, Inc.

23. Paragraph 131. Admitted that the Trans Continental Plaintiffs have not violated Section 11 of the Management Agreement.

24. Paragraph 132. Without knowledge and therefore denied.

25. Paragraph 133. Admitted that in or about April, 1996, the Group Member Defendants entered into an Exclusive Artists Recording Agreement with Trans Continental Records, Inc.

26. Paragraph 134. Admitted that, pursuant to the Recording Agreement, the Group Member Defendants are entitled, inter alia, to 50% of net royalties.

27. Paragraph 135. Admitted that Paragraph 19.10 of the Recording Agreement speaks for itself.

28. Paragraph 136. Admitted that Paragraph 20 of the Recording Agreement speaks for itself.

29. Paragraph 137. Denied.

30. Paragraph 138. Denied.

31. Paragraph 139. Denied that the Recording Agreement served to further Pearlman's adverse interests.

32. Paragraph 140. Denied.

33. Paragraph 141. Admitted that the April, 1996 Exclusive

4

Artist Recording Agreement was identical in form and content to the October, 1995 Agreement.

34. Paragraph 142. Admitted that during the summer of 1996, Pearlman learned that the trademark rights to the name 'N Sync were registered to a New Jersey Company called 'N Sync, Inc.

35. Paragraph 143. Admitted that the terms of the Exclusive Management Agreement and the Exclusive Artist Agreement speak for themselves.

36. Paragraph 144. Denied.

37. Paragraph 145. Admitted that the Group Member Defendants have enjoyed phenomenal success.

38. Paragraph 146. Denied.

39. Paragraph 147. Admitted that in or about August, 1996, Trans Continental Records, Inc. entered into a License Agreement with BMG Ariola Muenchen GmbH.

40. Paragraph 148. Admitted that the group recorded their first album which was released in Germany in October, 1996. Admitted that the group spent the next year touring in Europe.

41. Paragraph 149. Denied.

42. Paragraph 150. Admitted that 'N Sync returned to the recording studio to record new material for a U.S. album.

43. Paragraph 151. Denied.

44. Paragraph 152. Denied.

45. Paragraph 153. Admitted.

46. Paragraph 154. Admitted that 'N Sync served a termination letter on Trans Continental Plaintiffs with respect to

the Management Agreement and the Recording Agreement.

47. Paragraph 155. The Trans Continental Plaintiffs repeat and reallege their answers to paragraphs 109 through 154 hereof.

48. Paragraph 156. Denied.

49. Paragraph 157. Admitted that certain agreements were entered into by and between the respective parties to this litigation including, without limitation, the Exclusive Artist Recording Agreement, the Exclusive Management Agreement, the 'N Sync Productions, Inc. Stockholder Agreement and the BMG Ariola License.

50. Paragraph 158. Denied.

51. Paragraph 159. Denied.

52. Paragraph 160. The Trans Continental Plaintiffs repeat and reallege their answers contained in Paragraphs 109 through 159 hereof.

53. Paragraph 161. Denied.

54. Paragraph 162. Denied.

55. Paragraph 163. The Trans Continental Plaintiffs repeat and reallege their answers contained in Paragraphs 109 through 159 hereof.

56. Paragraph 164. Denied.

57. Paragraph 165. Denied.

58. Paragraph 166. Denied.

59. Paragraph 167. Without knowledge and therefore denied.

60. Paragraph 168. Denied.

61. Paragraph 169. The Trans Continental Plaintiffs repeat

6

and reallege their answers contained in Paragraph 109 through 159 hereof.

62. Paragraph 170. Admitted that Pearlman owns stock in Trans Continental Entertainment, Inc.

63. Paragraph 171. Denied.

64. Paragraph 172. Denied.

65. Paragraph 173. Denied.

66. Paragraph 174. Denied.

67. Paragraph 175. Denied.

68. Paragraph 176. Denied.

69. Paragraph 177. The Trans Continental Plaintiffs repeat and reallege their answers contained in Paragraphs 109 through 159 hereof.

70. Paragraph 178. Denied.

71. Paragraph 179. Denied.

72. Paragraph 180. Denied.

73. Paragraph 181. Denied.

74. Paragraph 182. Denied.

75. Paragraph 183. Denied.

76. Paragraph 184. Denied.

77. Paragraph 185. The Trans Continental Plaintiffs repeat and reallege their answers contained in Paragraphs 109 through 159 hereof.

78. Paragraph 186. Denied.

79. Paragraph 187. Paragraph 11 of the Management Agreement speaks for itself.

7

80. Paragraph 188. Without knowledge and therefore denied.

81. Paragraph 189. Without knowledge and therefore denied.

82. Paragraph 190. Admitted that the Group Member Defendants served a termination letter on Trans Continental Entertainment, Inc.

83. Paragraph 191. Denied.

84. Paragraph 192. Denied.

85. Paragraph 193. The Trans Continental Plaintiffs repeat and reallege their answers contained in Paragraphs 109 through 159 hereof.

86. Paragraph 194. Denied.

87. Paragraph 195. Admitted that the Recording Agreement speaks for itself.

88. Paragraph 196. Denied.

89. Paragraph 197. Admitted that 'N Sync served a termination letter on Trans Continental Records, Inc.

90. Paragraph 198. Denied.

91. Paragraph 199. The Trans Continental Plaintiffs repeat and reallege their answers contained in Paragraphs 109 through 159 hereof.

92. Paragraph 200. Denied.

93. Paragraph 201. Admitted that the Management Agreement speaks for itself.

94. Paragraph 202. Denied.

95. Paragraph 203. Denied.

96. Paragraph 204. Without knowledge and therefore denied.

8

97. Paragraph 205. Denied.

98. Paragraph 206. Denied.

99. Paragraph 207. Admitted that the Management Agreement speaks for itself.

100. Paragraph 208. Denied.

101. Paragraph 209. Denied.

102. Paragraph 210. Denied.

103. Paragraph 211. Denied.

104. Paragraph 212. The Trans Continental Plaintiffs repeat and reallege their answers contained in Paragraphs 109 through 159 and 185 through 198 hereof.

105. Paragraph 213. Denied.

106. Paragraph 214. Denied.

107. Paragraph 215. Denied.

108. Paragraph 216. Denied.

109. Except as expressly admitted herein, all other and remaining allegations in the Group Member Defendants' Counter-Claims are hereby expressly denied.

## AFFIRMATIVE DEFENSES

110. As their first affirmative defense, the Trans Continental Plaintiffs state that the Counter-Claims of the Group Member Defendants fail to state a cause of action upon relief can be granted.

111. As their second affirmative defense, the Trans Continental Plaintiffs state that the Group Member Defendants have failed to comply with conditions precedent under the Exclusive

9

Artist Recording Agreement and the Exclusive Management Agreement and under applicable law.

112. As their third affirmative defense, the Trans Continental Plaintiffs state that the Group Member Defendants lack standing to assert the counter-claims alleged.

113. As their fourth affirmative defense, the Trans Continental Plaintiffs state that the Group Member Defendants are estopped from asserting the counter-claims.

114. As their fifth affirmative defense, the Trans Continental Plaintiffs state that the Group Member Defendants' claims are barred by the Acceptance of Benefits Doctrine.

115. As their sixth affirmative defense, the Trans Continental Plaintiffs state that the counter-claims of the Group Member Defendants are barred by the Economic Loss Rule.

116. As their seventh affirmative defense, the Trans Continental Plaintiffs state that the Group Member Defendants have failed to name certain individuals and entities who are indispensable parties to Group Member Defendants' counter-claims.

117. As their eight affirmative defense, the Trans Continental Plaintiffs state that the Group Member Defendants have received payment for services rendered.

118. As their ninth affirmative defense, the Trans Continental Plaintiffs state that the counter-claims asserted by the Group Member Defendants should be set off against amounts paid to the Group Member Defendants.

119. As their tenth affirmative defense, the Trans Continental

Plaintiffs state that the counter-claims of the Group Member Defendants are barred under the Doctrine of Waiver.

120. As their eleventh affirmative defense, the Trans Continental Plaintiffs state that the counter-claims are barred under the Doctrine of Laches.

121. As their twelfth affirmative defense, the Trans Continental Plaintiffs state that the Group Member Defendants are responsible to pay all attorneys' fees and costs incurred by the Trans Continental Plaintiffs pursuant to the Exclusive Artist Recording Agreement, the Exclusive Management Agreement and Chapter 57.105, Florida Statutes.

122. As their thirteenth affirmative defense, the Trans Continental Plaintiffs state that the counter-claims of the Group Member Defendants are barred under the Doctrine of Unclean Hands.

123. As their fourteenth affirmative defense, the Trans Continental Plaintiffs state that the Group Member Defendants are estopped from claiming the relief alleged in the Counter-Claims by virtue of the fact that they have engaged in improper conduct.

124. As their fifteenth affirmative defense, the Trans Continental Plaintiffs state that the counter-claims fail to allege that Pearlman made misrepresentations of material fact in order to induce the Group Member Defendants to execute the subject Agreements.

125. As their sixteenth affirmative defense, the Trans Continental Plaintiffs state that the Group Member Defendants did not justifiably rely upon any alleged false statements of material

## SERVICE LIST

William B. Wilson, Esq.
Holland & Knight, LLP
200 South Orange Avenue, Suite 2600
Orlando, Florida  32802

Helene Freeman, Esq.
Dorsey & Whitney
250 Park Avenue, 15th Floor
New York, New York  10022

Melanie Stein, Esq.
Paul, Weiss, Rifkind, Wharton &
  Garrison
1285 Avenue of the Americas
Room 3123
New York, New York  10019

Jeffrey Keiner, Esq.
Gray, Harris & Robinson, P.A.
Post Office Box 3068
201 East Pine Street, Suite 1200
Orlando, Florida  32802

David B. King, Esq.
King, Blackwell & Downs, P.A.
Post Office Box 1631
Orlando, Florida  32802-1631

Michael D. Friedman, Esq.
Parker, Chapin, Flattau
  & Klimpl, LLP
1211 Avenue of the Americas
New York, New York  10036-8735

fact.

126. As their seventeenth affirmative defense, the Trans Continental Plaintiffs state that the Group Member Defendants committed the first material breach of the Exclusive Artist Recording Agreement and the Exclusive Management Agreement.

127. As their nineteenth affirmative defense, the Trans Continental Plaintiffs state that the Group Member Defendants have failed to allege the necessary elements to support claims for relief as alleged in the counter-claims.

**THE TRANS CONTINENTAL PLAINTIFFS RESPECTFULLY DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished this 22nd day of November, 1999 by Hand Delivery to the parties listed on the attached Service List.

_____
WILLIAM B. PRINGLE, III, ESQ.
William B. Pringle, III, P.A.
Florida Bar No.: 0777986
390 North Orange Avenue
Suite 2100
Orlando, Florida 32801
Telephone No. (407) 843-3701
Facsimile No. (407) 650-1800
Attorneys for Plaintiffs
TRANS CONTINENTAL RECORDS, INC.
TRANS CONTINENTAL ENTERTAINMENT,
INC., and LOUIS J. PEARLMAN

_____
J. CHENEY MASON, ESQ.
J. Cheney Mason, P.A.
Florida Bar No. 0131982
390 North Orange Avenue
Suite 2100
Orlando, Florida 32801
Telephone No. (407) 843-5785
Facsimile No. (407) 422-6858
Attorney for Plaintiffs
TRANS CONTINENTAL RECORDS, INC.
TRANS CONTINENTAL ENTERTAINMENT,
INC., and LOUIS J. PEARLMAN